UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STUART BILYEU, | ) | CASE NO.  4:09 CV 2804 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J. T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |

Pro se petitioner Stuart Bilyeu filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio, asserts the Second Chance Act of 2007 entitles him to 12 months placement in a Community Corrections Center ("CCC").

*Background*

Petitioner was sentenced on August 24, 2006 to serve 60 months imprisonment for violating 21 U.S.C. § 841(a)(1) in the United States District Court for the Eastern District of Michigan.  United States v. Bilyeu, No. 1:05 CR 80710 (E.D. Mich. 2005).  He alleges he commenced service of his sentence on October 19, 2006.

Mr. Bilyeu alleges he filed a Request for Administrative Remedy on March 19, 2009.  The request was in protest to a recommendation for his six months placement in a half-way house.  Petitioner asserted the Second Chance Act entitled him to 12 months placement in a CCC.  He

claims Case Manager Hayes advised him he would not be considered for 12 months placement "because the BOP's Regional Director, D. Scott Dodrill, believes that <u>'no inmate needs more than six months in a halfway house</u>', and that no inmates were to be offered more than six months half way house time."  (Pet. at 4 (emphasis in original).)

Petitioner's March 2009 request was denied.  He alleges the reply stated:  "'The Unit Team has determined that 6 months CCC placement is of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'"  (Pet. at 4.)  The warden also later denied Petitioner's request on April 13, 2009, "citing substantial investigation into Petitioner's request, including [application] of the BOP's Program Statement 7310.04, but after 'careful review', recommended a 180-day CCC placement." *Id.*  Bureau of Prisons ("BOP") Regional Director Dodrill also denied Petitioner's request and "determined that a reduced '150-180-day RRC placement' was appropriate."  (Pet. at 5.)  Petitioner subsequently exhausted his administrative remedies through the BOP before filing his petition in this Court.

*Analysis*

Petitioner argues the he is entitled to 12 months placement in a CCC under the Second Chance Act.  Under the Act, he asserts

> . . . [Respondent] and the BOP [have] apparently maintained adherence to its pre-Second Chance Act standard of limiting community corrections to six months, and [have] not utilized home detention to accelerate participation in community corrections by beginning the transfer to halfway house earlier, followed by up to six months of home detention.

(Pet. at 7.)  He claims the denial of his request for 12 months placement in a CCC "deprives him of rights [conferred] under the Second Chance Act, as well as the Equal Protection and Due Process Clauses of the Fifth Amendment."  (Pet. at 7.)

2

*A.  Initial Review*

This matter is before the court for screening.  28 U.S.C. § 2243; <u>Harper v. Thoms</u>, No. 02-5520, 2002 WL 31388736, at *1 (6th Cir. Oct. 22, 2002).  At this stage, allegations in the petition are taken as true and liberally construed in Petitioner's favor.  <u>Urbina v. Thoms</u>, 270 F.3d 292, 295 (6th Cir. 2001).  As Mr. Bilyeu is appearing <u>pro se</u>, his petition is held to less stringent standards than those drafted by attorneys.  <u>Burton v. Jones</u>, 321 F.3d 569, 573 (6th Cir. 2003); <u>Hahn v. Star Bank</u>, 190 F.3d 708, 715 (6th Cir. 1999).  For the reasons set forth below, his petition lacks merit.

*B.  Pre-Release Community Confinement*

The BOP's authority to designate where federal prisoners are confined is essentially based on two statutes.  The first, 18 U.S.C. § 3621, states:

> (b) The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering --
>
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence --
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > > (B) recommending a type of penal or correctional facility as a appropriate; and
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high

3

> social or economic status.  The Bureau may at any time, having
> regard for the same matters, direct the transfer of a prisoner from one
> penal or correctional facility to another. . . .

18 U.S.C. § 3621(b).  The second relevant statute, 18 U.S.C. § 3624, charges the BOP with

facilitating a prisoner's reentry into society.  It states in relevant part:

> (c)(1) The Director of the Bureau of Prisons shall, to the extent
> practicable, ensure that a prisoner serving a term of imprisonment
> spends a portion of the final months of that term (not to exceed 12
> months), under conditions that will afford that prisoner a reasonable
> opportunity to adjust to and prepare for the reentry of that prisoner
> into the community.  Such conditions may include a community
> correctional facility.

18 U.S.C. § 3624(c)(1).

Before December 20, 2002, the BOP allowed prisoners to be placed "in a CCC for

more than the 'last ten per centum of the term,' or more than six months, if appropriate."  Levine

v. Apker, 455 F.3d 71, 75 (2d Cir. 2006) (quoting U.S. Dept. of Justice, Federal Bureau of Prisons

Program Statement 7310.04 (Dec. 16, 1998)).  In December 2002, the Department of Justice Office

of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's

policy of placing offenders in CCCs for all or a significant portion of their sentences. United States

v. Sherpa, 251 F. Supp.2d 988, 989 (D. Mass. 2003) (internal quotation omitted).

The 2002 memorandum concluded that § 3621 did not confer general authority on

the BOP to place an offender in a CCC at any time or for any period of time.  Instead, the

memorandum concluded the BOP's authority to place an offender in community confinement

derived solely from § 3624(c), which limits the time an offender may be placed in a CCC to the

lesser of six months or ten percent of the offender's sentence.  See Woodall v. Bureau of Prisons,

432 F.3d 235, 240 (3d Cir. 2005).

4

The BOP adopted a new policy in December 2002 to reflect the Office of Legal Counsel's position limiting an inmate's release to community confinement for the last ten percent of his or her term of imprisonment or six months, whichever is shorter.  See id.  This policy prompted a barrage of prisoner lawsuits challenging its validity.  Ultimately, the First and Eighth Circuit Courts of Appeals found the 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a CCC, thus restricting transfer only to the last 10% of an offender's sentence or six months and contradicting the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors.  Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

The BOP responded to these decisions by adopting a new set of rules regulating CCC placement, effective February 14, 2005.  The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement."  28 C.F.R. § 570.20.  The regulations categorically denied CCC placement to any inmate not in the lesser of the last 10% or six months of his or her sentence, except under certain limited, enumerated circumstances:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of

community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.  Several courts in this circuit held the BOP's policy of categorically excluding placement in community confinement until the last ten percent or six months of a prisoner's sentence is contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering CCC placement.  See Luckett v. Eichenlaub, No. 07-10118, 2007 WL 3124666 (E.D. Mich. Oct.24, 2007); Halter v. Eichenlaub, No. 2:07-CV-11072, 2007 WL 2873944 (E.D. Mich. Sept. 25, 2007); Weirup v. Eichenlaub, No. 2:07-10672, 2007 WL 2300715 (E.D. Mich. Aug.7, 2007); Holloway v. Marberry, No. 2:06-12516, 2007 WL 1880386 (E.D. Mich. June 27, 2007).

## C.  Second Chance Act of 2007

In the midst of these challenges, Congress amended 18 U.S.C. § 3624(c)(1) through the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501, which was effective April 9, 2008. The Act amended § 3624(c)(1) to provide the BOP Director "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."  Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 657, 692 (2008).

In accordance with the Act, the BOP issued an interim policy memorandum on April 14, 2008 to address residential re-entry center ("RRC") placement considerations.  The memorandum states the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis

with reference to the five-factor criteria set out in § 3621(b).  Inmates previously denied RRC placement were to be reconsidered under the standards set out in the memorandum.  See Montes v. Sanders, No. No. CV 07-7284-CJC (MLG), 2008 WL 2844494, at *1 (C.D.Cal. July 22, 2008); see also Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008) ("In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that 'inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates.'").

The BOP's website indicates Mr. Bilyeu's release date is February 24, 2011.  See http://www.bop.gov.  While he seeks immediate consideration for CCC placement, his request does not take into consideration whether the BOP's actions are in compliance with the Act.  The BOP's interim policy memorandum on CCC placement consideration, which resulted from the newly enacted statute, requires that CCC placement decisions be made on an individual basis with reference to the five-factor criteria set out above in 18 U.S.C. § 3621(b).  Therefore, before a prisoner is even considered eligible for transfer, the BOP must consider the factors set forth in 18 U.S.C. § 3621(b).

## D. Transfer Not Appropriate Remedy

Here, Petitioner claims he was "told" the BOP's Regional Director Dodrill "believes that 'no inmate needs more than six months in a halfway house.'"  However, none of the responses to his appeals, including Mr. Dodrill's, made such a declaration.  Moreover, there is no BOP policy in place that categorically limits a prisoner's placement in a CCC, since that was the purpose of enacting the Second Chance Act.  Even if there were a concern that Petitioner was denied the privileges of the Act, the remedy is not an immediate transfer; rather, Mr. Bilyeu's remedy is a proper exercise of discretion by respondent.  See Woodall, 432 F.3d at 251.

Mr. Bilyeu received, through legislative and administrative action, all of the relief to which he is entitled.  In his response to Petitioner's request for early release, the Warden explained there was a "substantial investigation into Petitioner's request, including [application] of the BOP's Program Statement 7310.04, but after 'careful review', recommended a 180-day CCC placement."[1]  This does not suggest a categorical denial of his request based on any existing policy.  Because there is no policy which limits a prisoner's placement there is no live "case" or "controversy" over which this court has continuing jurisdiction.

Finally, to the extent Petitioner argues his constitutional rights are being violated because Respondent decided not to allow him 12 months in a CCC, he has no constitutional right to serve his sentence in a facility more to his choosing.  Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoners."  18 U.S.C. § 3621; Moody v. Daggett, 429 U.S. 78, 88 (1976).  There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence.  Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).

Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him -- as long it has considered the factors

---

[1]The Program Statement provides, in part:

> A number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources.  Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs. Additionally, inmates who are required to spend a portion of time in a CCC as a condition of release (i.e. supervised release or court order) do not require an extended Bureau CCC placement. . . .

BOP Program Statement 7310.04 at § 9 (Dec. 16, 1998).

8

set forth in § 3621(b) as required by the Second Chance Act of 2007.  The statute was effective April 9, 2008.  Mr. Bilyeu submitted his request in March 2009, 11 months after enactment of the statute, thus it was in effect at the time of his request.  Because Petitioner chose not to attach any BOP response to his present petition, the Court must presume from the warden's comments that all of the factors set forth in § 3621(b) were applied to the specifics of Petitioner's case as required by the new statute.

*Conclusion*

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good  faith.

IT IS SO ORDERED.


Dated:  June 8, 2010                    _/s/  John R. Adams_____
                                        JOHN R. ADAMS
                                        UNITED STATES DISTRICT JUDGE